**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHARLES KINGSMILL, JR., : | CIVIL CASE |
|     Plaintiff, : | |
|               v. : | |
| : | |
| ROUNDO AB, et al., : | |
|     Defendants. : | NO. 12-3524 |

**MEMORANDUM RE: DEFENDANT ROUNDO AB'S MOTION
TO DISMISS FOR LACK OF PERSONAL JURISDICTION
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2)**

**Baylson, J.**                                                                                                       **July 18, 2013**

## I.    Introduction

Plaintiff Charles Kingsmill, Jr. ("Plaintiff") filed a Complaint in the County of Philadelphia Court of Common Pleas against Defendants Roundo AB ("Roundo") and Comeq, Inc. ("Comeq") claiming negligence, strict liability, and breach of warranties arising out of injuries Plaintiff sustained while using a metal bending machine designed and manufactured by Roundo and sold to Plaintiff's employer by Comeq. On June 21, 2012, the case was removed to this Court. The next day, June 22, 2012, Roundo filed a Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) (the "Motion") (ECF 3).[1] Plaintiff requested jurisdictional discovery, and the Court initially granted sixty days of discovery by Order dated July, 26, 2012 (ECF 8).

On November 1, 2012, Plaintiff responded to Roundo's Motion, requesting additional discovery (ECF 17). Roundo replied on November 19, 2012 (ECF 18). The Court granted Plaintiff's request for additional discovery by Order dated December 21, 2012 (ECF 19). Plaintiff then filed a Sur-Response to Roundo's Motion on February 26, 2013 (ECF 20), to which Roundo filed a Sur-Reply on March 8, 2013 (ECF 22).

---

[1] Comeq is defending the case on the merits and does not dispute this Court's jurisdiction.

For the reasons below, Roundo's Motion is GRANTED, and Roundo is dismissed as a defendant in this case.

## II. Background

### A. The Court's Review of the Record

Roundo is a Swedish corporation that manufacturers forming machines for the metal industry. The focus of this case is a Roundo R3 Metal Bending Machine that injured Plaintiff in Philadelphia, Pennsylvania in January of 2011.

Roundo's principal place of business is in Hässleholm, Sweden; it maintains neither offices nor personnel in Pennsylvania, and it has no affiliates, agents, or property of any kind in the state. Neither has Roundo ever been licensed to do business in Pennsylvania, nor does Roundo directly market or advertise in the state. Roundo has never sent a representative into Pennsylvania.

The machine in question reached Pennsylvania in August of 2003, when Plaintiff's employer purchased it from Roundo's former exclusive distributor for the United States, Comeq, which is located in Maryland. (Machine Report at 28, Ex. 3 to Pl.'s Sur-Repl.) Comeq initially purchased the machine from Roundo, which Roundo delivered to Comeq in Maryland.

Notably, Roundo has never made a direct sale or delivery to anyone in the United States. Instead, Comeq purchases the machines from Roundo, which Roundo delivers to Comeq. Comeq then sells and delivers the machines throughout the United States.

Roundo has produced approximately 15,000 machines since it was founded in the 1960's. (Kajrup Dep. 13:19 to 14:16, Oct. 12, 2012, Ex. 6 to Pl.'s Sur-Resp.) During its relationship with Roundo, from 1972 through 2009, Comeq sold over 4,000 Roundo machines, (Ex. 1 to Pl.'s Sur-Resp) approximately 231 of which were sold to residents of Pennsylvania (Pa. Machine Report, Ex. 3 to Pl.'s Sur-Resp). By way of numerical summary:

2

1. Round sold approximately 26.7% of its machines to Comeq;

2. Comeq sold approximately 5.8% of those machines to customers in Pennsylvania;

3. Pennsylvania customers, therefore, account for approximately 1.5% of Roundo's business;

4. Comeq sold at least 1 Roundo Machine in Pennsylvania every year of their nearly 40-year relationship, although the average was closer to 6 machines per year;

5. Looking at 5-year periods beginning in 1975, Comeq sold more than 30 machines in Pennsylvania in 5 out of 7 of those periods, including 41 machines in the 2000 to 2004 period, during which Comeq sold the machine that injured Plaintiff.[2]

The record does not give a clear indication of the total value of Roundo's sales in the United States or Pennsylvania, except that from 2003 through 2009, Roundo made over $13,000,000 in sales to Comeq. (Roundo's Resps. to Pl.'s Revised Jurisdictional Discovery, at Question 1, Ex. 9 to Pl.'s Sur-Resp.)

Roundo marketed its machines in the Unites States through Comeq, which attended annual trade shows held in various states, maintained a website and network of local distributors, and sent out mailings and catalogues.[3] (Lazinsky Dep. 21:10 to 22:9, 38:13-24, Sept. 4, 2012, Ex. 2 to Pl.'s Sur-Repl. and Ex. B to Roundo's Repl.) The trade shows targeted a national and

---

[2] These numbers were not provided directly by the parties. The Court calculated them using the information in Exs. 1, 3, and 6 to Plaintiff's Sur-Response. The Court understands that the "Date" field in the Machine Report corresponds to the year in which Comeq sold the machine.

[3] While Roundo maintains a website advertising its products, including brochures about its machines and the ability to contact a sales representative responsible for North America, the record contains no evidence that any customer or potential customer from Pennsylvania visited Roundo's website, much less downloaded anything from it or contacted Roundo through it.

Roundo also has an area sales manager for North America, but the only evidence in the record indicates that the sales manager's role was limited to assisting Comeq with technical advice, i.e., he was not responsible for marketing and sales to any customers in the United States. (Kajrup Dep. 28:6 to 29:10.)

international market. A list of potential customers that Comeq compiled at one of the trade shows demonstrates that they lacked any focus on Pennsylvania, or even the mid-Atlantic region: of approximately 374 entries, only 13, or approximately 3.5%, were from companies located in Pennsylvania, and even a cursory glance reveals numerous entries from states in each of the 10 other federal circuits – e.g., Rhode Island, New York, North Carolina, Texas, Michigan, Indiana, Iowa, California, Colorado, and Georgia – as well as multiple entries from companies located in Canada and countries in Central and South America, such as Mexico, Costa Rica, and Peru. (Ex. 10 to Pl.'s Sur-Resp.) There is also no evidence that any show was ever held in Pennsylvania.

Furthermore, while the record indicates that Roundo sent a representative to the majority of these trade shows, the record does not clearly describe the representative's role at the shows,[4] and there is no evidence that the representative had any direct contact with potential customers or that Roundo ever received any information about potential customers that Comeq compiled at the trade shows. (Lazinsky Dep. 37:5-12 ("Q: Customer walks on the floor of one of these trade shows, asks for a Roundo brochure. . . . Does Roundo get a copy of the mailing list of prospective customers who you have mailed out the brochures to? / A: No.")

The record contains very little information about Comeq's relationships with its local distributors. The record does establish that some of Comeq's local distributors were located in Pennsylvania, these Pennsylvania local distributors maintained websites that advertised Roundo's products, (Exs. 7 and 8 to Pl.' Sur-Resp.) and Comeq hosted meetings for its local distributors in Maryland (Lazinsky Dep. 38:13-24).

---

[4] The record indicates that Roundo believes that the representative's role was only to "check out the competition and . . . offer technical advice" to Comeq. (Kajrup Dep. 40:13 to 41:20 (describing the representative's current role vis-à-vis Roundo's current distributor).)

The evidence provided by Plaintiff regarding the local distributors' websites is minimal, consisting of printouts of their webpages and product lists, according to which, as of certain dates in July of 2009 and sometime in 2007, approximately eleven local distributors in Pennsylvania advertised Roundo products. Plaintiff also provided printouts with dates in 2012, which is after Roundo and Comeq terminated their relationship. Notably, nothing in the record sheds light on how or whether these local distributors advertised Roundo products before or around 2003, the year in which Comeq sold the machine that injured Plaintiff to Plaintiff's employer.

Regarding Comeq's meetings for its distributors, they apparently involved local distributors from all around the country, and the record contains no indication of their frequency. (Lazinsky Dep. 38:18-24, 62:19 to 63:24.) A Roundo representative may have attended some of these meetings, though the record lacks any description of the representative's role at the meetings. Most importantly, nothing in the record indicates the nature, if any, of Roundo's involvement with Comeq's local distributors.

Roundo maintains that it was never aware of where Comeq sold its machines. Comeq asserts that Roundo requested lists of purchasers, which would have included this information. (Lazinsky Dep. 33:14 to 35:15.) The number and dates of these requests, however, is not established by the record. Nor has the Court been provided with any of Comeq's responses to Roundo's alleged requests.[5] Comeq understood that Roundo wanted these lists for the purpose of identifying "big name" purchasers, such as Exxon, for marketing purposes. Comeq did not

---

[5] The Machine Report Plaintiff submitted as Exhibit 3 to its Sur-Reply has a "Printed on" date of November 11, 2009, and the record indicates that it is not one of Comeq's responses to Roundo's alleged requests. (Lazinsky Dep. 61:12 to 62:5 ("Q: And this document was one of the documents that Round asked be returned to it when the exclusive dealership contract was terminated . . . . / A: In a different form, yes.").)

indicate that Roundo used these lists to identify specific markets for its machines or to monitor Comeq's performance.

Roundo disputes that it ever requested such information prior to the termination of its relationship with Comeq. Roundo also claims that when it did finally request the information, Comeq provided only an unreadable computer file. (Kajrup Dep. 45:2 to 46:10, Ex. C to Roundo's Resp.)

### B. Plaintiff's Contentions

The Court finds it necessary to directly address certain of Plaintiff's contentions about Roundo's contacts with the United States and Pennsylvania, because they go to the heart of the question of personal jurisdiction in this case.

Plaintiff contends that Roundo acknowledged Comeq as its agent, which, if true, could form a basis for this Court to exercise jurisdiction over Roundo. See D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 108 (3d Cir. 2009) ("The concept underlying the agency theory of personal jurisdiction is the familiar principle that a principal is responsible for the actions of its agent."). For the reasons below, however, Plaintiff's argument is unavailing – it is supported by neither the record nor legal authority.

Plaintiff's purported evidence that Comeq is Roundo's agent is limited to:

1. Roundo's generic statements on its website that it has agents throughout the world,

2. An article written by a third-party describing Comeq and Roundo as having a partnership,

3. The fact that Comeq employees would visit Roundo, and vice versa, and

6

4. That the distribution agreement between Comeq and Roundo contains obligations that Plaintiff characterizes as going beyond the mere sale of machines.[6]

However, the Court's review of the distribution agreement revealed no language suggesting that Roundo and Comeq intended to create a principal-agent relationship. To the contrary, the agreement indicates that Comeq would remain independent from Roundo. This reading of the agreement is supported by deposition testimony to the effect that Roundo understands that its distributors market and sell machines on their own behalves, (Kajrup Dep. at 24:4-9), and Comeq generally bought machines from Roundo "for [its] own account." (Lazinsky Dep. at 15:17-21.) Furthermore, Roundo repeatedly denied that Comeq was its agent, (Kajrup Dep. at 21:11 to 24:14, 34:7-20, 36:13 to 37:6) and Comeq never acknowledged an understanding that it was Roundo's agent.[7]

Ultimately, Plaintiff proffers neither evidentiary support nor legal authority for its contention that Comeq was Roundo's agent. See Beyond Sys., Inc. v. Realtime Gaming Holding Co., LLC, 878 A.2d 567, 582-83 (Md. 2005) (Maryland courts "have recognized three factors as having particular relevance to the determination of an agency relationship. These factors are:

---

[6] The Court notes that the distribution agreement in the record is dated November 5, 1993, but that there was apparently a new agreement signed after November of 2003. ("Sales Agreement," Ex. 5 to Pl.'s Sur-Resp. & Ex. 6 to Pl.'s Sur-Resp. at 39-40; Lazinsky Dep. at 28:9-15.) However, the record does not indicate if or how the terms of the two agreements differed.

[7] Roundo's website apparently refers to its current distributor as an agent, (Kajrupi Dep. at 37:8-12) but Roundo denies that they actually have a principal-agent relationship, (id. at 37:17) and, in any event, the record contains no similar instance of Roundo referring to Comeq as its agent. The Court also notes that nothing in the record indicates that Roundo's current distributor is located in Pennsylvania.

(1) The agent's power to alter the legal relations of the principal; (2) The agent's duty to act primarily for the benefit of the principal; and (3) The principal's right to control the agent").[8]

Plaintiff also makes much of certain marketing statements on Roundo's website – such as Roundo's claiming control of the entire production chain, from customer inquiries to delivery of the final product; calling the purchasers of its machines customers, clients, and partners; boasting of repeat customers – as well as Roundo's obligation under its distribution agreement with Comeq to direct any purchase inquiries from potential customers in the United States to Comeq. Plaintiff does not, however, offer any evidence that Roundo contacted or was contacted directly by a Pennsylvania resident. Nor is there any evidence that Comeq acted as a conduit for communication between Roundo and a Pennsylvania resident, such as might occur if a customer made a unique request regarding one of Roundo's machines.

Lastly, Plaintiff mischaracterizes certain key aspects of the record. Plaintiff asserts that Roundo:

1. Helped formulate Comeq's marketing strategies in the United States;

2. Participated yearly in Comeq's local distributor meetings in Maryland;

3. Was otherwise directly involved with Comeq's local distributor network;

4. Directly solicited potential customers at trade shows;

5. Had Comeq provide it with lists of leads compiled at the trade shows;

6. Used these leads to directly solicit new customers, including customers in Pennsylvania;

---

[8] The Court assumes that Maryland law applies to Comeq's and Roundo's agreement, there being no choice of law clause.

7. Had Comeq provide a list of machine purchasers on a yearly basis;

8. Marketed to Pennsylvania customers through its website by redirecting their inquiries to Comeq.

However, nothing in the record supports these assertions.

## III. Legal Standard

### A. Federal Rule of Civil Procedure 12(b)(2) Motion to Dismiss for Lack of Jurisdiction

When deciding a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the court is required to take all of plaintiff's factual allegations as true and to resolve all factual disputes in plaintiff's favor. Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009). Once a jurisdictional defense is raised, the plaintiff bears the burden of proving, through affidavits or other competent evidence, sufficient contacts with the forum state to establish personal jurisdiction. Id. When the district court does not hold an evidentiary hearing, the plaintiff must establish only a prima facie case of personal jurisdiction to proceed with the case.[9] Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 155 (3d Cir. 2010). The burden then shifts to the defendant to establish that the exercise of

---

[9] While there has been extensive jurisdictional discovery in this case, there has been no evidentiary hearing, nor has one been requested by either party. When there is an evidentiary hearing, a plaintiff must demonstrate minimum contacts by a preponderance of the evidence. LaSala v. Marfin Popular Bank Public Co., Ltd., 410 F. App'x 474, 476 (3d Cir. 2011). These contrasting standards applied to 12(b)(2) motions mirror the "facial attack versus factual attack" evidentiary standards applied to 12(b)(1) motions. See Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992) (adopting the contrasting 12(b)(2) standards from Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981)); see also Marine Midland, 664 F.2d at 904 ("If the court chooses not to conduct a full-blown evidentiary hearing on the [12(b)(2) ] motion, the plaintiff need make only a prima facie showing of jurisdiction ... [T]he plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial."); Gould Elecs. Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000) (explaining that, when considering a 12(b)(1) motion to dismiss, the complaint is considered true for a facial attack on the sufficiency of the pleadings while other evidence is considered when evaluating a factual attack on the truth of the allegations).

jurisdiction would be unreasonable. See Carteret, 954 F.2d at 150 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

**B.      Personal Jurisdiction**

Federal Rule of Civil Procedure 4(k) authorizes a federal district court to assert personal jurisdiction over a non-resident defendant to the extent permitted by the law of the state where that court sits. See O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007). The court must first determine whether there is a statutory basis for the exercise of jurisdiction, and must then analyze whether exercising jurisdiction would exceed the limits of the Due Process Clause of the Fourteenth Amendment. Eurofins, 623 F.3d at 155. The Pennsylvania long-arm statute authorizes jurisdiction over persons "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Stat. Ann. § 5322(b). Therefore, the analysis for federal courts sitting in Pennsylvania, like this Court, collapses into one inquiry: whether the defendant has "certain minimum contacts with [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 nn.8-9 (1984). Plaintiff does not argue that Roundo has the contacts necessary to support general jurisdiction; the Court, therefore, considers only specific jurisdiction.

The test for specific jurisdiction is satisfied where:

1. A defendant purposefully directed activities at the forum state,
2. The claim arises out of or is related to those activities, and

> 3. The court's exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009) (citing Burger King, 471 U.S. at 472, 476; Helicopteros, 466 U.S. at 414). Plaintiff argues only a single basis for this Court's jurisdiction over Roundo in this case, the "stream of commerce" theory from Asahi Metal Industry Co., Ltd. v. Superior Court of California, 480 U.S. 102 (1987).

According to the Third Circuit, the Supreme Court in Asahi "attempted to elucidate the elements of jurisdiction based on the stream-of-commerce theory. Unfortunately, the Asahi Metal Court presented three different conceptions of purposeful availment through the stream of commerce, none of which was endorsed by a majority of the Court." Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 204 (3d Cir. 1998). Of the three conceptions set forth in Asahi, the Third Circuit has treated two of them, known as the Justice O'Connor standard and the Justice Brennan standard, as the tests that should be applied to determine if a defendant has created minimum contacts with a forum based on a stream of commerce analysis.[10] D'Jamoos, 566 F.3d at 105 n.5 (citing Pennzoil, 149 F.3d at 207 n.13); Renner v. Lanard Toys Ltd., 33 F.3d 277, 283-84 (3d Cir. 1994)).

Under "Justice O'Connor's standard (which is more stringent than Justice Brennan's)," a defendant is only subject to jurisdiction if its "placement of a product in the stream of

---

[10] The Supreme Court addressed the stream of commerce analysis again in J. McIntyre Machinery, Ltd. v. Nicastro, — U.S. —, 131 S.Ct. 2780 (2011), but no formulation commanded a majority of the justices. The Third Circuit has yet to issue an opinion addressing the impact of J. McIntyre on its stream of commerce jurisprudence. However, other circuit courts that have had occasion to review the question have held that J. McIntyre made no change in the law. Ainsworth v. Moffett Eng'g, Ltd., 716 F.3d 174 (5th Cir. 2013); AFTG–TG, LLC v. Nuvoton Tech. Corp., 689 F.3d 1358 (Fed. Cir. 2012); see also Monge v. RG Petro-Machinery (Grp.) Co. Ltd., 701 F.3d 598, 619 (10th Cir. 2012) (citing J. McIntyre in the course of applying both the O'Connor and Brennan positions from Asahi).

11

commerce" was "accompanied by some '[a]dditional conduct . . . indicat[ing] an intent or purpose to serve the market in the forum State,'" such as:

1. "'[D]esigning the product for the market in the forum State'"; or

2. "'[E]stablishing channels for providing regular advice to customers in the forum State.'"

Id. at 206 (quoting Asahi, 480 U.S. at 112).

Under Justice Brennan's standard, a defendant is subject to jurisdiction if:

1. "[T]here is a 'regular and anticipated flow of products from manufacture to distribution to retail sale'"; and

2. "The defendant is aware that the final product is being marketed in the forum state."

Lanard Toys, 33 F.3d at 280-81 (quoting Asahi, 480 U.S. at 117). In other words, under Justice Brennan's standard, although "the stream of commerce does not consist of 'unpredictable currents or eddies' . . . '[a]s long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise.'" Pennzoil, 149 F.3d at 204 (quoting Asahi, 480 U.S. at 117).

## V. Discussion

The Court finds that Roundo is not subject to the jurisdiction of this Court because it lacks the minimum contacts with Pennsylvania necessary to satisfy due process.

As described above, approximately 231 Roundo Machines were sold by Comeq in Pennsylvania over the course of nearly 40 years. Though the number of machines sold in any given year was as low as 1, Comeq did sell at least one Roundo machine in Pennsylvania every year that it acted as Roundo's distributor in the United States. Part of Comeq's marketing involved local distributors located in Pennsylvania. However, Comeq's marketing and delivery

12

of 231 machines over nearly 40 years is, on the record before the Court, the extent of Roundo's connection to Pennsylvania.

Plaintiff provides no evidence indicating that Roundo had direct contact with a Pennsylvania resident, even outside of Pennsylvania, or that Roundo ever communicated with a Pennsylvania resident through Comeq. Nor has Plaintiff provided anything indicating that Pennsylvania is a market of particular importance to Roundo (or Comeq), such as might be the case if Pennsylvania hosted a uniquely large number of businesses that purchase the kinds of machines Roundo produces. Furthermore, nothing in the record indicates that Roundo had any input into Comeq's marketing efforts, engaged in its own marketing efforts, or was even aware of the number of its machines that Comeq sold in any state, including Pennsylvania. Although Comeq claims that it sent reports to Roundo containing such information, Roundo denies ever requesting or receiving such reports and, despite extensive discovery, Plaintiff failed to produce a single example of one.

Plaintiff has pointed to no case in the Third Circuit, and the Court is aware of none, in which a court exercised jurisdiction over a domestic or foreign defendant under similar circumstances.[11] In fact, on a materially similar record, Judge McLaughlin in the Western

---

[11] Plaintiff's reliance on Pennzoil, 149 F.3d 197 and Lanard Toys, 33 F.3d 277, is misplaced. The facts in Pennzoil are very different from the facts in this case. The defendant in that case sold solvent to Ohio producers of certain grades of crude oil. Approximately sixty percent of that crude oil was then sold to Pennsylvania residents, one which was the plaintiff in the case, Pennzoil. The defendant not only knew the foregoing, but had also been in direct contact with Pennzoil. Summarizing the record, the Third Circuit stated:

> The Ohio producers sent most of their oil to Pennsylvania; [the defendant] indirectly benefited from the sale to Pennsylvania refineries; [the defendant] was aware of that indirect benefit; and [the defendant] had expressed a desire to preserve its relationship with at least one Pennsylvania refinery (Pennzoil's) by conforming its solvents to the refinery's specifications.

13

District of Pennsylvania declined to exercise jurisdiction over Roundo. Renner v. Roundo AB, No. 1:08-cv-209-SJM, 2010 WL 3906242 (W.D. Pa. Sept. 29, 2010). Although Plaintiff claims to have created a materially different record in this case, the Court finds that Judge McLaughlin's recounting of the record in his case aptly describes the record Plaintiff developed here:

1. Roundo's products were designed for a world market;

2. Roundo's distribution agreement with Comeq covered the entire United States;

3. The distribution agreement indicates that Comeq acted independently of Roundo;

4. The record is "devoid of any evidence shedding meaningful light on Comeq's marketing efforts, if any, within [Pennsylvania], much less Roundo's awareness of those efforts," id. at 10,

    a. The only evidence of Roundo's products being advertised in Pennsylvania is internet sites of Comeq's local distributors,

    b. There is no evidence regarding these websites before or around the time of the sale of the machine in this case,

    c. There is no evidence linking Roundo to these local distributors;

5. Sales of Roundo machines in Pennsylvania were small, constituting only 1% to 6% of Roundo's yearly sales;

---

149 F.3d at 207.

     Lanard Toys does not contain a holding regarding jurisdiction in that case, but remands the case for further jurisdictional discovery. The opinion does indicate that jurisdiction under the stream of commerce theory may be predicated on evidence of significant sales of a product in the forum, participation in trade shows serving markets that include the forum, or that a product was designed for the forum's market. 33 F.3d at 283-84. However, nothing in the Lanard Toys opinion, or any other case in the Third Circuit, indicates that 231 sales over nearly forty years, comprising just 1.5% of a company's sales over that same period, is a substantial number of sales. Furthermore, for reasons discussed in the text, there is no indication that Roundo was involved in any marketing efforts aimed at Pennsylvania.

14

6. The record indicates that Pennsylvania comprised a small number of Comeq's sales of Roundo machines per year;[12] and

7. There is nothing in the record indicating the percentage of revenue that Roundo received from sales of its machines in Pennsylvania.

The Court notes that in Renner v. Roundo, there was apparently no evidence of Roundo having participated in any trade shows or local distributor meetings. However, Roundo's regular attendance at trade shows for national and international markets and infrequent attendance at meetings for Comeq's nation-wide network of local distributors does not mandate a different outcome in this case. This is particularly true because Plaintiff has provided no evidence indicating how Roundo's attendance at these trade shows and meetings is related to Pennsylvania. See D'Jamoos, 566 F.3d at 105 ("[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." (emphasis added)).[13]

---

[12] In Renner v. Roundo, the record apparently did not contain a Machine Report indicating the number of machines Comeq sold in Pennsylvania each year of its relationship with Roundo. See id. at 9 (stating that "[w]e have not been provided any specific breakdown to show how many Roundo machines typically entered [Pennsylvania] in any given year"). Nevertheless, Judge McLaughlin made a rough estimate of 4 to 6 machine sales per year in Pennsylvania, which is consistent with the Machine Report in this case, which indicates that the vast majority of years saw sales of 7 machines or less in Pennsylvania.

[13] The Court notes that the Fifth Circuit – applying its version of the stream of commerce test, which permits jurisdiction based on "mere foreseeability or awareness" so long as the "defendant's product made its way into the forum state while still in the stream of commerce" – affirmed a district court's exercise of jurisdiction over a forklift manufacturer that, over approximately 10 years, sold over 13,000 forklifts to its exclusive United States distributor, which resold 203 of them in the forum state. Ainsworth v. Moffett Eng'g, Ltd., 716 F.3d 174 (5th Cir. 2013). Even if the Court were to treat Ainsworth as persuasive evidence that Roundo's contacts with Pennsylvania satisfy the Justice Brennan standard, Ainsworth is distinguishable, because the Fifth Circuit relied, in part, on the fact that the forklift manufacturer designed its machines for use in the poultry industry, and the forum state was the fourth largest poultry

In sum, although there was a small, though regular, trickle of Roundo's machines into Pennsylvania, Plaintiff has provided no evidence from which it can reasonably be inferred that Roundo was aware, or even should have been aware, that Comeq was selling its machines in Pennsylvania, much less that Roundo engaged in conduct evincing an intent or purpose to serve the state.[14] Accordingly, this Court cannot exercise jurisdiction over Roundo consistent with due process. Cf. Whitecap Inv. Corp. v. Putnam Lumber & Exp. Co., Civil No. 2010-139, 2013 WL 1155351, at *10-11 (D.V.I. Mar. 21, 2013) (jurisdiction appropriate where Brennan standard was satisfied – because the manufacturer defendant continued to sell its products to a distributor after learning that the distributor sold the products in the forum and the forum residents were arguably covered by the manufacturer's warranty – and the O'Connor standard was satisfied by "evidence of at least one instance of additional conduct directed at" the forum).

## VI.   Conclusion

For the reasons above, Roundo's Motion is GRANTED. An appropriate order follows.

O:\CIVIL 12\12-3524 kingsmill v. roundo\12cv3524.Memo re 12(b)(2) Mot.docx

---

producer in the United States. Nothing in the record in this case indicates that Roundo had a similar reason to be interested in Pennsylvania.

[14] The Court notes that the agreement between Roundo and Comeq contains a provision whereby, upon termination of the agreement, Roundo was obligated to continue to guarantee the machines that Comeq had sold "on the same terms and to the same extent as herein provided in Roundo's guarantee to Comeq," which required Roundo to guarantee for a limited period that "all products . . . be free from defects in material and workmanship and to furnish Comeq, without cost, spare parts . . . ." ("Sales Agreement," Ex. 5 to Pl.'s Sur-Resp. at 2, ¶ 4.c & Ex. 6 to Pl.'s Sur-Repl. at 39, ¶ 8.) Plaintiff did not bring this provision to the attention of the Court. Regardless, he offers no evidence that Roundo ever had contact with a Comeq customer as a result of this guarantee, and, based on the record as developed in this case, the existence of such a guarantee does not tip the scales in favor of exercising jurisdiction over Roundo. See Whitecap Inv. Corp., 2013 WL 1155351, at *10 (warranty was evidence in favor of jurisdiction, but was not sufficient to justify jurisdiction). Cf. Metcalfe, 566 F.3d at 334-35 (holding that a ten-year warranty "coupled with" "sales and advertising [that] demonstrate[d] a pattern of contacts with the" forum "tend[ed] to support the exercise of general personal jurisdiction over" the defendant).